### Jacob F. Traylor et al., Impleaded, etc., v. W. S. Barry, Receiver of the Coffeen Coal & Copper Co., and Duncan McLean.

1. MINER'S LIENS.—*Under the Act of 1895.*—Under the act of 1895 entitled "An act to protect laborers and miners for labor performed in developing and working coal mines" (Laws of 1895, 242), every laborer or miner who performs labor in opening and developing any coal mine, including sinking shafts, constructing slopes or drifts, mining coal and the like, is entitled to have a lien upon all the property, real and personal, of the person, firm or corporation owning, constructing or operating such mine, used in the construction or operation thereof, for the value of such labor, upon the same terms, with the same rights, and to be secured and enforced as mechanics' liens are secured and enforced.

2. SAME—*Coal Mines in the Hands of Receivers During the Period of Redemption Under Foreclosure Proceedings.*—A receiver, appointed by the court on the petition of a purchaser, at a foreclosure sale, of such mine, during the period of the equity of redemption, has authority to operate and improve the mine in order to preserve it; to employ miners and agree to pay them out of the moneys made from such operating; and in case such moneys are not sufficient for that purpose, the effect will

be to bind the mining plant with the lien given by the act of 1895 and make it liable for their services.

**Intervening Petition,** to enforce a miner's lien. Appeal from the Circuit Court of Montgomery County; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the May term, 1901. Reversed and remanded. Opinion filed September 11, 1901.

ZINK, JETT & KINDER and WEBB & WEBB, attorneys for appellants.

MILLER & MILLER and LANE & COOPER, attorneys for appellees.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

The appellants, Jacob F. Traylor and C. F. Edwards, together with a number of others, by leave of court, filed their intervening petition in the Circuit Court of Montgomery County in a certain foreclosure proceeding then pending in that court wherein Isaac N. Jones et al. were complainants, and Coffeen Coal & Copper Company et al. were defendants, and making W. S. Barry, the receiver of said company, and Duncan McLean, the purchaser of the property involved in said foreclosure proceedings, defendants thereto.

The petition, in effect, was: That Isaac N. Jones et al. filed their bills against said Coffeen Coal & Copper Co., for foreclosure of a mortgage against the property of said company; that a decree of sale was entered December 2, 1898; that on the 9th day of January, 1899, the property was sold under said decree to one Duncan McLean for the sum of $17,000; that on the 1st day of February, 1899, the report of the sale was approved by the court and a certificate of purchase issued by the master to said Duncan McLean; that on the last named day said Duncan McLean filed his intervening petition in said court, setting up that during the period of redemption the property should be operated as a coal mine in order that it might be preserved and protected, and prayed the court to appoint a suitable person receiver of said property with power to operate the same

and to pay the operating expenses thereof, and to bring the money realized over and above such operating expenses into court, to abide the further order of the court; that upon a hearing of said petition, on the 1st day of February, 1899, W. S. Barry was appointed receiver; that he qualified as such receiver and took possession of said property, and operated the same as such receiver until about May 10, 1900; that from about the last named date said receiver abandoned the mine and refused and failed to protect and preserve the same until the same became flooded with water and the entries and roadways caved in and otherwise obstructed, rendering it necessary in order to preserve said mine to pump the water therefrom and to clean up and re-open the entries and roadways; that on the 11th day of September, 1900, the said receiver determined to re-open, develop and operate the said coal mine, and to that end engaged the petitioners, who went upon and into the said coal mine premises, which are fully described and set out in the petition, and rendered services to said receiver, cleaning up and removing the fallen slate, coal dirt and other obstructions from said entries and roadways, establishing air courses, making cross-cuts, and otherwise bestowing labor and work, opening and developing said mine, all of which was necessary for the purpose of resuming the operation thereof by said receiver, and that the receiver is indebted to the petitioners as follows: To Ed. Bunton, $12.35. (Here follows about one hundred and eighty names with sums following each name, varying in amounts. Among those names appears the following: "Edwards & Traylor, $48.50.")

The petition further states that the mine had become wrecked and rendered almost valueless, and that the labor rendered by the petitioners materially enhanced the value thereof and permanently improved the same, and thus preserved the property from absolute ruin and destruction; that said receiver promised to pay the petitioners for their services according to the scale of wages adopted at Springfield, Illinois, March 10, 1900, at the convention of the coal operators of Illinois, and the United Mine Workers of

America, on the first and fifteenth of every month, and that the said sums of money are the balances accruing from the 11th day of September, A. D. 1900, to the present time, and are now due and unpaid; that no part of said sums of money have been paid, though often demanded of said receiver; that said indebtedness was necessarily incurred in the re-opening and developing of said mine and by said receiver in carrying out said decree and order of the said Circuit Court made upon the petition of the said Duncan McLean, and by and with the consent of all the other par- ties in said cause; that the said property and the interest of the said Duncan McLean and of all the parties to this cause, as well as the proceeds arising from the operation thereof, are in equity and good conscience liable and bound for the payment of all of said indebtedness due to these said intervenors; and that under the statute of the State of Illinois, the petitioners have now a lien upon all of said coal mining property, as in and by such statutes provided, and that if the said sums of money are not paid, the peti- tioners are entitled to have all of said coal mining property sold under a decree and order of the court for the purpose of satisfying the petitioners' said liens and discharging the amounts so due them.

The prayer of the petition is that the court order the receiver to pay the petitioners the amounts of their several claims, if he has assets sufficient therefor, and in the event that said receiver can not so pay the petitioners, then the court order an account to be taken in this behalf under the direction of the court.

That the petitioners may be decreed to have a lien, as before stated, upon the said premises, and that the said Duncan McLean may be decreed to pay unto the petition- ers the amount due them by a short day to be fixed by the court, and that in default of such payments the said prem- ises may be sold, by the further direction of the court, to satisfy such amounts and costs; that in case of sale and fail- ure to redeem, the said Duncan McLean and all other per- sons may be forever barred and foreclosed.

W. S. Barry, as receiver, filed his answer to said petition, in which he admits the foreclosure of the Jones mortgage; that the property was sold to Duncan McLean; that he was appointed receiver on the petition of Duncan McLean, and took charge of and operated said mine; but denies that on the 10th of May, 1900, he abandoned and refused to care for said mine, and that the roadways caved in, and became obstructed, and the air courses destroyed, or that it was necessary to use pumps constantly to prevent an overflow; he further denies that he determined to re-open said mine on or about September 11, 1900, and denies that he engaged any person to work, operate or run said mine, or that anybody did so by his directions or request, and denies that the petitioners were engaged by him from the 11th of September, 1900, to operate or work said mine, as stated in the petition, or that he requested any or either of the petitioners to do any work or labor on said mine, and denies that the receiver is indebted to the said petitioners, or either of them, for any work or labor, as stated in the petition, or that they, or either of them, have any claim against the receiver for any work or labor, as mentioned in said petition, or have any claim whatever, by lien or otherwise, on the property of said mine. The receiver further denies that said mine has been wrecked and rendered valueless or incapable of being operated, and denies that he agreed to pay for the services of any of the petitioners, according to the scale of wages adopted at Springfield or anywhere else, as set out in said petition.

The receiver further denies that if the petitioners have rendered any services in said mine it was not done by the direction or order of this court, and that said property is not liable in equity for the payment of the same.

Duncan McLean adopts the answer of W. S. Barry, receiver, as his answer, and denies any liability or indebtedness to any or either of the petitioners.

Upon the petition, those answers, and the evidence taken in open court, the proceeding was heard, and the court found for the defendants and entered a decree dismissing the petition, with costs to the petitioners.

From that decree appellees Jacob F. Traylor and C. F. Edwards alone have prosecuted an appeal to this court, and urge that it be reversed and the proceeding remanded for another hearing, upon the alleged grounds that the finding and decree are contrary to the evidence in the case and the equities of the parties.

The evidence shows that appellee W. S. Barry was appointed receiver of the Coffeen Coal & Copper Company's property under the circumstances and for the purposes stated in the petition, and that the petitioners, appellees among the rest, performed the services substantially for the purposes therein stated; that the receiver and Duncan McLean, the purchaser of said property at said foreclosure sale, consented and requested that such services be rendered for the purposes stated in the petition, and that there was due each of the petitioners the sums of money claimed by them respectively.

The claim made by appellants is that, the evidence having sustained the allegations of their petition, the court should have found for them and entered a decree in accordance with the prayer of their petition, because they had a lien upon the property in the hands of the receiver, under the act of 1895, protecting laborers and miners for labor performed in developing and working in coal mines, which is as follows:

" That every laborer or miner who shall perform labor in opening and developing any coal mine, including sinking shafts, constructing slopes, or drifts, mining coal and the like, shall have a lien upon all the property of the person, firm, or corporation owning, constructing or operating such mine, used in the construction or operation thereof, including real estate, buildings, engines, cars, mules, scales, and all other personal property, for the value of such labor for the full amount thereof, upon the same terms, with the same rights, and to be secured and enforced as mechanics' liens are secured and enforced."

And appellees contend that the property in question, being in the custody of the law, appellants could not obtain a lien upon it under said act in the absence of any order of court directing the receiver to have the work

done for which appellants are claiming pay, and that the evidence fails to show that the receiver or the purchaser, Duncan McLean, employed appellants to perform such work or promised to pay them therefor.

The record of said foreclosure proceedings shows that Duncan McLean, on February 1, 1899, filed a petition therein as follows:

"Your petitioner, Duncan McLean, respectfully represents unto your honor that at the sale of the premises (the coal mine and property of said coal and copper company), made on the 9th day of January, 1899, under the decree of foreclosure in the above proceedings, your petitioner became the purchaser of said premises for the sum of $17,000, which sum your petitioner has paid to the master in chancery of said county; that your petitioner now holds a certificate of purchase to said premises from said master calling for a deed to the same at the expiration of fifteen months from the day of sale if the same are not redeemed as provided by law.

"Your petitioner further represents that said premises are mining premises, for the purpose of mining and hoisting coal for market; that to protect the interest of your petitioner, as well as all other parties in interest, the same should be operated during the period of redemption; that if the same is not operated nor cared for the same will deteriorate and go to destruction and loss, and at the end of the redemption period, the mine below would practically be worthless; that to keep the property in condition so that it would be of value at the end of the redemption period, would cost about $300 per month if the mine was not operated and coal mined; that the company is wholly insolvent and can not redeem the same; that there are judgment creditors of said company, but whether they will redeem the same your petitioner is not advised.

"That it would be to the best interest of said company and of said judgment creditors, as well as your petitioner, to have said mine and property operated by a receiver appointed by this honorable court during the period of redemption, as the profits arising from said operation of said mine would more than pay the expenses of keeping said mine in good condition for all parties in interest.

"Your petitioner therefore prays that your honor will appoint some suitable person receiver for said property with power to operate said mine, and with directions, after pay-

ing the operating expenses, that he will bring the money arising from operating the same, into court, to be hereafter distributed under the order and directions of the court, as the court may deem just and equitable, and your petitioners will ever pray, etc."

And that under said petition the court, on said 1st day of February, 1899, entered an order appointing said W. S. Barry such receiver, and directing him to take possession of all the property of said coal and copper company, and that he run and operate said mining plant, and in so doing, to exercise all the franchises of said company in this regard; that he employ all necessary agents, attorneys, servants and employes to properly run, operate and manage said mining plant and its affairs; that he report to the court on or before February 7, 1899, the names and number of employes necessary to operate said mine, together with the monthly wages paid to each, and from time to time pay out on proper vouchers, any money that may come to his hands as such receiver from the earnings of said property or otherwise, for any of the purposes specified in this order; and that said receiver will from time to time, as he may have any net earnings in his hands, bring the same into court, that the same may be ordered paid according to the equities of the parties interested.

Under the authority of that order, made under the petition of Duncan McLean, the purchaser of the mine, we entertain no doubt but that the receiver and purchaser together had the authority to employ appellants, as the evidence shows they did, to operate and improve the mine in order to preserve it, and to agree to pay them therefor, as the evidence also shows they did, out of the moneys made from such operating, and in case it was not sufficient, then the effect would be to bind the mining plant with the lien given therefor by said act of 1895; for the receiver and the purchaser, under the law and said order of court, had all the necessary interest in the plant to enable them to employ appellants and make it liable for their services.

We are satisfied, therefore, that under the evidence and the equities of the parties in this proceeding, the Circuit

Court erred in finding for the receiver and the purchaser, and in dismissing the petition, and for that reason we will reverse its decree herein, and remand the cause to that court for such further proceedings as are consistent with the views herein expressed, and as to equity and justice shall appertain. Reversed and remanded.